IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
SAVANNAH DIVISION

| | |
|---|---|
| CHERYL EDENFIELD, as legal guardian and next friend of QUINCY EDENFIELD,<br><br>    Plaintiff,<br><br>    v.<br><br>HISCOX, INC.; HISCOX INSURANCE COMPANY INC.; LLOYD'S AMERICA, INC., d/b/a Certain Underwriters at Lloyd's, London; and CERTAIN UNDERWRITERS AT LLOYD's, LONDON,<br><br>    Defendants. | CIVIL ACTION NO.: 4:22-cv-146 |

**O R D E R**

Presently before the Court is Plaintiff Cheryl Edenfield's Motion to Remand. (Doc. 23.) Plaintiff brought this suit in Liberty County State Court on behalf of her son Quincy Edenfield against Defendants Hiscox, Inc., Hiscox Insurance Company Inc., Lloyd's America, Inc., d/b/a Certain Underwriters at Lloyd's, London, and Certain Underwriters at Lloyd's, London (collectively "Defendants"). (See doc. 1-1.) Plaintiff alleges, *inter alia*, that Defendants negligently and in bad faith failed to settle a separate tort suit brought by Plaintiff against HealthCare Staffing, Inc. ("HCS"), for injuries Quincy received while residing at Gateway Behavioral Health Services ("Gateway"). (Id.) Defendant Certain Underwriters at Lloyd's, London ("Underwriters") removed to this Court, (doc. 1), and Plaintiff filed the at-issue Motion to Remand, (doc. 23), which includes a request for attorneys' fees.[1] For the reasons stated below,

---

[1] Also pending in this case are three separate motions to dismiss filed, respectively, by Defendants Hiscox, Inc., (doc. 9), Hiscox Insurance Company Inc., (doc. 14), and Lloyd's America, Inc., (doc. 15), as well as a Motion to Reassign and Consolidate this case with three other civil actions pending before the Court,

the Court **GRANTS in part and DENIES in part** the Motion. (Id.) The Court **GRANTS** Plaintiff's request for remand but **DENIES** Plaintiff's request for attorneys' fees and costs pursuant to 28 U.S.C. § 1447(c). The Court **DIRECTS** the Clerk of Court to **REMAND** this case to the State Court of Liberty County, Georgia, and to **TERMINATE** all pending motions and deadlines and **CLOSE** this case.

## BACKGROUND

I.  **The Parties and HCS's Insurance Policy**

The following allegations are set forth in the Complaint, (doc. 1-1). Plaintiff Cheryl Edenfield is a Georgia resident and the mother and legal guardian of Quincy Edenfield, an incapacitated adult who suffers from severe autism. (Id. at p. 2.) Defendants are engaged in the insurance business in Georgia. (Id. at pp. 2–3.) Except for Defendant Hiscox, Inc., which is headquartered in Georgia, Defendants are foreign corporations. (Id.) Non-party HCS (the defendant in the tort action brought by Plaintiff) is a Georgia staffing agency that supplies individuals to serve on the staffs of hospitals, nursing homes, long-term care facilities, and community service boards in Georgia. (Id. at p. 4.)

Prior to the incidents giving rise to this suit, Hiscox, Inc.[2] entered into a contract with a syndicate of Defendants Lloyd's America, Inc., and Underwriters (collectively, "Lloyd's") by which Hiscox, Inc. would write and issue insurance policies, make coverage determinations, and

---

(doc. 10). Because the Court finds that Defendants have failed to show that Hiscox, Inc. was fraudulently joined, see Discussion Section I, infra, the Court lacks jurisdiction to rule on these motions.

[2] The Complaint uses the short form "Hiscox" to refer collectively to Defendants Hiscox, Inc. and Hiscox Insurance Company Inc. (Doc. 1-1, p. 2.) As such, the Complaint's allegations against "Hiscox," in effect, are attributable to both Defendants. However, because Defendants' Motion alleges only that Hiscox, Inc. has been fraudulently joined, (see generally doc. 23), the Court sets forth the Complaint's allegations as they relate to Hiscox, Inc.

otherwise act as the insured's insurance company, while the Lloyd's syndicate's members would pay claims and/or defense costs. (Id. at p. 7.) Hiscox, Inc. wrote and issued a policy on behalf of HCS which included both commercial general liability ("CGL") and professional liability coverage, policy number AH00000154-01 (the "Policy").[3] (Id. at p. 6.) The Policy had per-claim liability limits of $1,000,000.00 and an aggregate limit of $3,000,000.00 for both its CGL and professional liability coverages. (Id.; see id. at p. 55.) Additionally, the Policy contained an "Abuse or Molestation Exclusion" which provided that the Policy's CGL coverage did not apply to "bodily injury" arising out of "the actual or threatened abuse or molestation by anyone of any person while in the care, custody or control of any insured," or the negligent employment, supervision, or retention of a person who abuses or molests a person in their care.[4] (Id. at pp. 9, 58.)

## II.     Quincy's Abuse, the Tort Action, and Plaintiff's Settlement Attempts

Plaintiff alleges that, from December 2015 through February 2016, Quincy was physically and mentally abused by an HCS employee named Errol Wilkins while residing as a patient at Gateway, which is a legislatively created entity that serves individuals with developmental disabilities. (Id. at pp. 4–5.) According to the Complaint, on multiple occasions, Wilkins hit Quincy with his fists and threatened, intimidated, and humiliated him. (Id. at p. 5.) On September 6, 2017, on Quincy's behalf, Plaintiff brought various tort claims against HCS in the State Court of Liberty County, including negligent training and retention and assault and battery (the "Tort Action"). (Id. at p. 8; see id. at pp. 20–35.) Shortly thereafter, Plaintiff's counsel sent a demand letter to HCS offering to resolve Quincy's claims against it for $12,000,000. (Id. at p. 8; see id. at

---

[3] The Policy was effective during, at least, the period from July 24, 2015, through July 24, 2016. (Doc. 1-1, p. 6.)

[4] This exclusion is set forth in Endorsement E9979.1 to the Policy. (Doc. 1-1, pp. 9, 58.)

pp. 48–54.) HCS forwarded the demand letter to Hiscox, Inc., and, a few months later, Hiscox, Inc. sent HCS a "Coverage Declination" letter (the "Denial Letter"). (Id. at pp. 8–9; see id. at pp. 55–58.) The Denial Letter, which is written on "Hiscox" letterhead, states, "Certain Underwriters at Lloyd's London ('Hiscox') has recently been made aware of a lawsuit filed against [HCS] on September 6, 2017[,] by [Plaintiff]," and "[i]t is our understanding that HCS seeks coverage for this claim under the . . . [P]olicy." (Id. at p. 55.) The Denial Letter continues, "Based on Hiscox's understanding of the facts to date, Hiscox must respectfully advise you that there is no coverage available for HCS under the Hiscox Policy." (Id.) Specifically, the Denial Letter reasons that "all of the allegations in the [Tort Action] are precluded by" the Policy's abuse exclusion. (Id. at p. 56.)

Hiscox, Inc. did not provide legal representation or a defense to HCS in the Tort Action, and, thus, HCS litigated the case at its own expense. (Id. at p. 11.) On March 18, 2019, Plaintiff served HCS an offer to settle the case for $1,000,000. (Id.) Hiscox, Inc. did not tender the demanded amount. (Id. at p. 12.) Subsequently, on December 20, 2021, HCS withdrew its answer to Plaintiff's complaint and went into default by operation of O.C.G.A. § 9-11-55. (Id.) The state court held a prove-damages hearing on Plaintiff's tort claims and, on December 29, 2021, entered a final judgment against HCS in Plaintiff's favor in the amount of $5,000,000. (Id.) On January 5, 2022, Plaintiff sent a demand letter to Hiscox, Inc. offering to resolve all claims against it and HCS by paying the $5,000,000 judgment, plus fees and costs. (Id. at pp. 12–13; see id. at pp. 59–67.) Hiscox, Inc. rejected Plaintiff's demand. (Id. at p. 13.)

**III.   This Action and Plaintiff's Motion to Remand**

On May 26, 2022, Plaintiff sued Defendants in Liberty County State Court, alleging that Defendants (1) negligently and in bad faith refused to accept her offer to settle within policy limits,

4

(2) breached their duty under the Policy to defend HCS in the Tort Action, and (3) engaged in a civil conspiracy to deny insurance coverage for HCS.[5]  (Id. at pp. 13–18.)  Plaintiff also asserted a claim for attorneys' fees under O.C.G.A. § 13-6-11.  (Id. at p. 18.)  Plaintiff attached various exhibits to her state Complaint, including the Denial Letter.  (See id. at pp. 20–95.)

Underwriters removed this action to this Court pursuant to 28 U.S.C. § 1441, arguing that complete diversity exists between Plaintiff and all Defendants except Hiscox, Inc., whom, Underwriters contend, was fraudulently joined to prevent removal.  (Doc. 1, p. 4 (Notice of Removal).)  Plaintiff then filed the at-issue Motion to Remand, arguing, *inter alia*, (1) that the Court lacks subject matter jurisdiction because Defendant Hiscox, Inc. is not diverse, and (2) that Underwriters failed to prove that Hiscox, Inc. was fraudulently joined.  (Doc. 23.)  Plaintiff also requests an award of attorneys' fees and costs pursuant to 28 U.S.C. § 1447(c).  (Id.)  The Motion has been fully briefed.  (Id.; docs. 28, 38, 44.)

## LEGAL STANDARD

Actions initially filed in a state court may be removed to federal court in two circumstances: (1) where the claim presents a federal question or (2) where diversity jurisdiction exists.  28 U.S.C. § 1441(a–b).  Federal courts, as courts of limited jurisdiction, must remand a case removed on diversity grounds where there is not complete diversity of citizenship between the parties or where one of the named defendants is a citizen of the state in which the suit is filed.  28 U.S.C. § 1441(b).  In this circuit, "there is a presumption *against* the exercise of federal jurisdiction, such that all uncertainties as to removal jurisdiction are to be resolved in favor of remand."  Russell Corp. v. Am. Home Assurance Co., 264 F.3d 1040, 1050 (11th Cir. 2001) (emphasis added), *abrogated on*

---

[5] Before Plaintiff filed this lawsuit, Certain Underwriters brought a separate suit in this Court seeking a declaratory judgment that it is not obligated to pay the Judgment because claims arising from Quincy's abuse were excluded under the Policy.  See No. 4:22-cv-35.  That suit remains pending.

*other grounds by* Overlook Gardens Props., LLC v. ORIX USA, L.P., 927 F.3d 1194, 1202 (11th Cir. 2019).

Even so, courts may retain jurisdiction and "ignore the presence of [a] non-diverse defendant" where the plaintiff fraudulently joined that defendant solely to defeat federal diversity jurisdiction. Stillwell v. Allstate Ins. Co., 663 F.3d 1329, 1332 (11th Cir. 2011).

> To establish fraudulent joinder, 'the removing party has the burden of proving by clear and convincing evidence that either: (1) there is no possibility the plaintiff can establish a cause of action against the resident defendant; or (2) the plaintiff has fraudulently pled jurisdictional facts to bring the resident defendant into state court.'

Id. (quoting Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir. 1997)) (alterations omitted).

When ruling on a motion to remand, "the district court must evaluate the factual allegations in the light most favorable to the plaintiff and must resolve any uncertainties about state substantive law in favor of the plaintiff." Crowe, 113 F.3d at 1538. "The federal court makes these determinations based on the plaintiff's pleadings at the time of removal; but the court may consider affidavits and deposition transcripts submitted by the parties." Id. In making this determination, "federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." Id. Indeed, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." Coker v. Amoco Oil Co., 709 F.2d 1433, 1440–41 (11th Cir. 1983), *superseded by statute on other grounds as stated in* Georgetown Manor, Inc. v. Ethan Allen, Inc., 991 F.2d 1533 (11th Cir. 1993); see also Stillwell, 663 F.3d at 1334–35 (finding that the district court erred in concluding the defendant was fraudulently joined because "at the very least, [it is] possible that a Georgia state court would conclude that" the plaintiff's complaint stated a cause of action against the defendant given Georgia's notice pleading standards).

6

The burden of establishing fraudulent joinder "is a heavy one," and such a claim must be supported by clear and convincing evidence. Stillwell, 663 F.3d at 1332 (internal quotations omitted). In addressing a fraudulent joinder claim, "this Court 'must necessarily look to the pleading standards applicable in state court, not the plausibility pleading standards prevailing in federal court.'" McKenzie v. King Am. Finishing, Inc., No. 6:12-cv-065, 2012 WL 5473498, at *3 (S.D. Ga. Nov. 9, 2012) (quoting Stillwell, 663 F.3d at 1334). In contrast to the federal pleading standard, Georgia simply requires notice pleading. See O.C.G.A. § 9–11–8(e). Thus, "it is immaterial whether a pleading states conclusions or facts as long as fair notice is given, and the statement of claim is short and plain. The true test is whether the pleading gives fair notice . . . ." Carley v. Lewis, 472 S.E.2d 109, 110–11 (Ga. Ct. App. 1996).

## DISCUSSION

Defendants concede that both Plaintiff (in her representative capacity) and Defendant Hiscox, Inc. are citizens of Georgia. (Doc. 1, p. 2–3.) Thus, unless Defendants can prove by clear and convincing evidence that Hiscox, Inc. was fraudulently joined, the case must be remanded for lack of subject matter jurisdiction due the absence of complete diversity amongst the Parties. Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 373 (1978) ("[D]iversity jurisdiction does not exist unless *each* defendant is a citizen of a different State from *each* plaintiff."). Accordingly, the Court must determine whether there exists a "possibility that a state court would find that the Complaint states a cause of action against" Hiscox, Inc. Coker, 709 F.2d at 1440.

Defendants contend that Hiscox, Inc. has been fraudulently joined because the Complaint fails to state claims against Hiscox, Inc. for "negligent and bad faith failure to settle within policy limits," breach of contract, civil conspiracy, and attorneys' fees and costs. (Doc. 28, p. 5.) According to Defendants, "[e]ach of these claims are predicated on an alleged duty owed by

7

Hiscox, Inc. to provide coverage to [HCS] under the Policy," but Hiscox, Inc. owed no such duty to HCS because *Underwriters*—not Hiscox, Inc.—is HCS's insurer. (Doc. 9, p. 6; see doc. 28, p. 2.)[6] Plaintiff, however, argues that she "sufficiently alleged that Hiscox, Inc. acted as an insurer and breached its corresponding duties to [HCS,] its insured." (Doc. 23, pp. 17–18.) Thus, Plaintiff argues, the Complaint's allegations and supporting documents demonstrate valid claims against Hiscox, Inc. (Id. at p. 8.) For the reasons stated below, the Court agrees with Plaintiff and, consequently, finds that the case must be remanded for lack of subject matter jurisdiction.

### I.    There is a Possibility that a State Court Would Find that the Complaint States a Claim against Hiscox, Inc. for Failure to Settle.

Count I of the Complaint alleges that Hiscox, Inc. breached its duty to act with ordinary care and good faith when handling Plaintiff's claims against HCS in the Tort Action by, *inter alia*, failing to accept an offer to settle within the limits of the Policy despite having a reasonable opportunity to do so. (Doc. 1-1, pp. 13–14.) Count I is premised upon Hiscox, Inc.'s status as the insurer of the Policy. In Georgia, an "insurer" is "any person engaged as indemnitor, surety, or contractor who issues insurance, annuity or endowment contracts, subscriber certificates, or other contracts of insurance by whatever name called." O.C.G.A. § 33-1-2(5). "Person," for purposes of Georgia's insurance code, includes a corporation. O.C.G.A. § 33-1-2(7). Under Georgia law, an insurer must "use ordinary care and good faith in the handling of a claim against its insured." Dumas v. ACCC Ins. Co., 349 Fed. App'x 489, 491 (11th Cir. 2009) (quoting Metro. Prop. & Cas. Ins. Co. v. Crump, 513 S.E.2d 33, 34 (Ga. Ct. App. 1999)). These duties require insurers to "act reasonably in responding to a settlement offer," and an insurer may be liable for damages for failing to settle when "no ordinarily prudent insurer would have declined to accept the offer."

---

[6] Defendants' Response incorporates the arguments Hiscox, Inc. made in support of its Motion to Dismiss for being fraudulently joined. (Doc. 28, p. 2; see docs. 9, 26.) Thus, the Court, at times, cites to that briefing in summarizing Defendants' arguments in response to Plaintiff's Motion to Remand.

Baker v. Huff, 747 S.E.2d 1, 6 (Ga. Ct. App. 2013).  Furthermore, "[w]hen presented with a settlement offer within policy limits, an insurer must 'act[] reasonably in responding to [the offer],' and rest its decision of whether to settle on 'equal consideration to the interests of the insured.'" Camacho v. Nationwide Mut. Ins. Co., 13 F. Supp. 3d 1343, 1354 (N.D. Ga. 2014) (quoting Cotton States Mut. Ins. Co. v Brightman, 580 S.E.2d 519, 521 (Ga. 2003)); see also S. Gen. Ins. Co. v. Holt, 416 S.E.2d 274, 276 (Ga. 1992) ("In deciding whether to settle a claim within the policy limits, the insurance company must give equal consideration to the interests of the insured.").

      Here, viewed in the light most favorable to Plaintiff, the pleadings at the time of removal contain sufficient allegations to state a possible failure to settle claim against Hiscox, Inc. Specifically, the Complaint, along with the Denial Letter attached thereto, provide "fair notice" of Plaintiff's claim that Hiscox, Inc. was HCS's insurer and that, in its capacity as HCS's insurer, Hiscox, Inc. negligently and in bad faith refused to accept Plaintiff's offer to settle for less than the Policy's limits.  With respect to Hiscox, Inc's status as the insurer of the Policy, the Complaint alleges that Hiscox, Inc. "wrote and issued the Policy and formed the contractual relationship with HCS."  (Doc. 1-1, pp. 6–7.)  Furthermore, the Complaint specifically avers that Hiscox, Inc. "act[ed] as the insureds' insurance company" pursuant to a contract with Lloyd's which "embraced the Policy and the business/contractual relationship with HCS."  (Id. at p. 7.)  Indeed, the Denial Letter, which is written on "Hiscox" letterhead, explicitly states that "*Hiscox* issued [the Policy] to HCS" and repeatedly refers to the Policy and HCS, respectively, as the "*Hiscox* Policy" and "*Hiscox*[*'s*] Insured."  (Id. at pp. 55–57 (emphases added).)  Furthermore, notably, the Denial Letter treats Hiscox, Inc. and Certain Underwriters as the same entity because it uses the short form "Hiscox" to refer to Certain Underwriters.  (Id. at p. 55.)  The Denial Letter also concludes by stating that "Hiscox . . . reserves *its* rights under all other terms, conditions, exclusions and

9

endorsements in the Hiscox Policy, as well as at law." (Id. at p. 57 (emphasis added).) Moreover, with respect to Hiscox, Inc.'s failure to settle, the Complaint alleges that Hiscox, Inc. refused to tender the $1,000,000 demanded in Plaintiff's March 18, 2019, settlement offer (which is less than the Policy's alleged $3,000,000 aggregate claim limit for CGL coverage) and, in doing so, "negligently, unreasonably, and in bad faith declined to take advantage of the opportunity to protect HCS from a judgment in excess of policy limits." (Id. at p. 12; see id. at pp. 7, 10–11.) The Complaint also alleges that Hiscox, Inc. failed to "give HCS's financial interests at least equal consideration with their own interests in the handling of Plaintiff's claims." (Id. at p. 14.)

Viewing the Letter in conjunction with the Complaint's allegations, it is at least possible that a state court could find that Hiscox, Inc. was HCS's insurer and that it breached its duty to settle in good faith. Notwithstanding, Defendants maintain that Plaintiff failed to state an arguable claim against Hiscox, Inc. because the Certificate of Insurance establishes that *Underwriters*, and not Hiscox, Inc., is HCS's insurer under the Policy. (Doc. 28, p. 2; see also doc. 9, pp. 7–13.) This argument fails for three reasons.

First, Defendants' argument amounts to an attack on the merits of Plaintiff's claim and ignores the appropriate inquiry: whether the Complaint's allegations state a possible claim against Hiscox, Inc. under Georgia's notice pleading standards. The United States Court of Appeals for the Eleventh Circuit has warned repeatedly that resolving a claim of fraudulent joinder "must not subsume substantive determination" and that, "[w]hen considering a motion for remand, federal courts are not to weigh the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." Crowe, 113 F.3d at 1538; see also Pacheco de Perez v. AT&T Co., 139 F.3d 1368, 1380–81 (11th Cir.1998). Indeed, "[i]n the remand context, the district court's authority to look into the ultimate merit of the plaintiff's claims must be limited to checking for

10

obviously fraudulent or frivolous claims." Crowe, 113 F.3d at 1542. As noted above, the Court has determined from the pleadings that Count I is not obviously fraudulent or frivolous because the Complaint adequately alleges that Hiscox, Inc., acting as HCS's insurer, rejected Plaintiff's offer to settle within the Policy's coverage limits without giving equal consideration to HCS's financial interests.

Second, the Certificate of Insurance was not attached to the Complaint and was only submitted as an as an exhibit to Hiscox, Inc.'s Motion to Dismiss for fraudulent joinder, (doc. 9). Defendants have not cited, and the Court has not located, any authority suggesting that the Court may consider such extrinsic evidence when ruling on a motion to remand.[7] In Crowe, the Eleventh Circuit stated that, in addition to the factual allegations contained in the "plaintiff's pleadings at the time of removal," courts may consider "*affidavits and deposition transcripts* submitted by the parties." Id. at 1538 (emphasis added); see B, Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. Unit A 1981) ("In support of their removal petition, the defendants may submit *affidavits and deposition transcripts*; and in support of their motion for remand, the plaintiff may submit *affidavits and deposition transcripts along with the factual allegations contained in the verified complaint*.") (emphasis added). Plainly, the Certificate of Insurance, which is unverified and unsigned, is neither an affidavit nor a deposition transcript (nor any other form of sworn testimony). (See doc. 9-1.) Indeed, Defendants failed to submit *any* sworn testimony concerning

---

[7] In its Motion to Dismiss, Hiscox, Inc. argued that the Court could review the Certificate of Insurance pursuant to the incorporation by reference doctrine, which permits a court to review certain documents attached to a Rule 12(b)(6) motion without converting the motion into a motion for summary judgment. See Brooks v. Blue Cross & Blue Shield, 116 F.3d 1364, 1369 (11th Cir. 1997) ("[W]here the plaintiff refers to certain documents in the complaint and those documents are central to the plaintiff's claim, then the Court may consider the documents part of the pleadings for purposes of Rule 12(b)(6) dismissal, and the defendant's attaching such documents to the motion to dismiss will not require conversion of the motion into a motion for summary judgment."). Defendants take for granted that this doctrine applies in the motion to remand context and have cited no case law suggesting that courts may consider documents attached, for the first time, to a defendant's Rule 12(b)(6) motion to dismiss when ruling on a motion to remand.

the identity of the Policy's insurer. Additionally, the Certificate of Insurance was not submitted "in support of" Underwriters' removal petition or Plaintiff's Motion to Remand, but was only submitted as part of Hiscox, Inc.'s Motion to Dismiss. B, Inc., 663 F.2d at 549.

Finally, even if the Court were to consider the Certificate of Insurance, it does not provide clear and convincing evidence that Hiscox, Inc. was not the insurer of the Policy. As stated above, Georgia law defines an "insurer" to include a corporation "engaged as indemnitor, surety, or contractor who *issues* insurance." O.C.G.A. § 33-1-2 (emphasis added). The Certificate of Insurance provides that it is "[e]ffective with **UNDERWRITERS AT LLOYD's, London.**" (Doc. 9-1, p. 1 (emphasis in original).) Furthermore, the Certificate states,

> In [a]ccordance with the authorization granted to Hiscox[,] Inc[.] under [c]ontract . . . by certain Underwriters at Lloyd's, London . . . and in consideration of the premium specified herein, the said Underwriters do hereby bind themselves . . . to insure as follows in accordance with the terms and conditions contained or endorsed [in the Certificate].

(Id.) Notably, however, the Certificate *does not* indicate that Lloyd's *issued* the Policy. (See generally doc 9-1.) To the contrary, the Certificate provides that it is "*[b]y* Hiscox, Inc." (Id. at p. 1 (emphasis added).) Moreover, the Certificate—like the Denial letter—is written on Hiscox letterhead, (see doc. 9-1), and lists Hiscox, Inc.'s address at the bottom of each page of the CGL Coverage Form, (id. at pp. 12–29). Coupled with the fact that the Denial Letter states that Hiscox issued the Policy, repeatedly refers to the Policy as the "Hiscox Policy," and reserves Hiscox's rights under the Policy, the Certificate, at best, creates a dispute of fact concerning the identity of the insurer of the Policy. Yet, crucially, the existence of a disputed fact is not a basis to deny remand. See Crowe, 113 F.3d at 1539–41 (stating that a plaintiff "need not show that [s]he could survive . . . a motion for summary judgment," and cautioning courts to limit their analysis to determining whether the plaintiff stated "an arguable claim" under Georgia law).

12

Here, after drawing all reasonable inferences from the state court record in Plaintiff's favor, the Court finds that Plaintiff has stated an arguable failure to settle claim against Hiscox, Inc. and Defendants have failed to meet their burden of proving fraudulent joinder by clear and convincing evidence. Thus, "joinder is proper and the case should be remanded to state court" for lack of subject matter jurisdiction.[8] Pacheco de Perez, 139 F.3d at 1380.

## II. Attorneys' Fees under 28 U.S.C. § 1447 Are Not Warranted

28 U.S.C. § 1447(c) authorizes a court to "require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The United States Supreme Court has held that courts may award attorneys' fees under this provision when "the removing party lacked an objectively reasonable basis for seeking removal." Martin v. Franklin Cap. Corp., 546 U.S. 132, 141 (2005). Plaintiff argues that she is entitled to an award of attorneys' fees and costs pursuant to Section 1447(c) because Certain Underwriters lacked an objectively reasonable basis for removing the action. (Doc. 23, pp. 19–21.) Specifically, she argues that "the face of [her] [C]omplaint clearly alleged the legal elements of viable claims against Hiscox, Inc.," and "the documents attached to the [C]omplaint . . . illustrate Hiscox, Inc.'s involvement in the insurance dispute that is the basis of Plaintiff's claims." (Id. at p. 20.) Defendants, on the other hand, argue that removal was reasonable "based upon the clear language of the Policy." (Doc. 28, p. 17.) Under the applicable standard, Defendants have the better argument. Defendants had a reasonable basis to believe that Hiscox, Inc. was not the insurer of the Policy (and, thus, owed no duty to HCS to settle in good faith) because the Certificate states

---

[8] The Court need not address Defendants' arguments with respect to Plaintiff's remaining claims because "it is sufficient that one claim may 'possibly' result in recovery for [her]." Chapman v. Provident Life & Accident Ins. Co., No. 2:05-cv-992-TMP, 2005 WL 8158102, at *3 (N.D. Ala. Aug. 10, 2005), report and recommendation adopted, No. 2:05-cv-992-TMP, 2005 WL 8158101 (N.D. Ala. Sept. 13, 2005); see id. (finding that "it is not necessary that every claim against the non-diverse defendant be colorable" for joinder of the non-diverse defendant to have been proper).

13

that the Policy is "effective with Underwriters at Lloyd's" and provides that "Underwriters do hereby bind themselves . . . to insure as follows in accordance with the terms and conditions contained or endorsed hereon." (Doc. 9-1, p. 1 (emphasis removed).) Although, as noted above, the Certificate of Insurance does not clearly and convincingly show that Lloyd's—and not Hiscox, Inc.—was HCS's insurer, see Discussion Section I, supra, it provided Certain Underwriters a reasonable basis to believe that was the case, and, thus, that Hiscox, Inc. had been fraudulently joined. Accordingly, an award of fees under Section 1147(c) is unwarranted.

## CONCLUSION

Based on the forgoing, the Court lacks subject matter jurisdiction to adjudicate Plaintiff's claims against Hiscox, Inc., and Defendants failed to meet their burden of proving that Hiscox, Inc. was fraudulently joined. Thus, Plaintiff Cheryl Edenfield's Motion to Remand, (doc. 23), is **GRANTED in part and DENIED in part**, in that Plaintiff's request for remand is **GRANTED** while Plaintiff's request for attorneys' fees and costs pursuant to 28 U.S.C. § 1447(c) is **DENIED**. The Court **DIRECTS** the Clerk of Court to **REMAND** this case to the State Court of Liberty County, Georgia, and to **TERMINATE** all pending motions and deadlines and **CLOSE** this case.

**SO ORDERED**, this 22nd day of November, 2022.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA